34

UNITED STATES, Appellee,

v.

Wayne D. FIELDS, Sergeant, U.S. Air Force, Appellant.

No. 41,269.
ACM 22803.

U. S. Court of Military Appeals.

Feb. 14, 1983.

For Appellant: *Colonel George R. Stevens* (on brief); *Colonel Verlin D. Dickman.*

For Appellee: *Colonel James P. Porter, Lieutenant Colonel Bruce R. Houston* (on brief); *Captain Frederick J. Sujat,* USAFR.

*Opinion of the Court*

PER CURIAM:

Before a general court-martial with members, appellant pleaded guilty to seven of the ten specifications laid against him alleging various drug offenses. Of the remaining three specifications, appellant was acquitted of one but convicted of the other two. Thereupon, he was sentenced to a dishonorable discharge, confinement at hard labor for 2 years, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved these results and the United States Air Force Court of Military Review affirmed. Upon appellant's petition, we granted review of this case to decide the following issue:

WHETHER THE APPELLANT WAS PREJUDICED BY THE TRIAL COUNSEL'S IMPROPER CROSS–EXAMINATION OF THE APPELLANT AS TO WHETHER HE HAD TESTIFIED AT THE ARTICLE 32 INVESTIGATION.

Upon full consideration of the cross-examination of appellant and the subsequent use to which trial counsel put the answers derived therefrom, we conclude that the thrust of the questioning may not fairly be inferred to have been comment on appellant's pretrial decision to remain silent.

The following is a full recital of that portion of appellant's cross-examination dealing with the Article 32 investigation:

Q. *Prior to this date, has there been any occasion where I've talked to you about the circumstances of the events leading up to these charges against you?*

A. You mean this trial?

Q. That's right.

A. Have you talked to me before about anything about this trial?

Q. That's correct.

A. *No.*

Q. What about Captain Howell? Has he talked to you?

A. No.

Q. *You recall a prior investigation—it's called an Article 32 investigation— about the same incidents that are part of what we are involved with here today?*

A. Yes, I do.

Q. *At that time all of the evidence or a majority of the evidence anyway that has come forward today was also brought before you at that time, is that correct?*

A. Yes, sir.

DC: *Your Honor, I would object to this line of questioning as being immaterial and irrelevant.*

MJ: *I will allow one more question to see if it is or isn't.*

Q. (ATC) *Since the time of the Article 32 investigation that I mentioned, you've had time to prepare your defense to everything you've heard today, is that correct?*

A. Yes.

MJ: *The objection is overruled.*

Q. (ATC) So you know what the government is relying on, the points the government is relying on today to substantiate or prove its charges against you, is that correct?

A. I realize that all these charges are something that's pending right now.

Q. My question was you were aware of what the government or what evidence the government was going to rely on to prove its charges?

A. Yes.

Q. So you're not surprised by any of this?

A. I've read it; I was surprised but I read it.

(Emphasis added.) One further question was asked—this time by one of the members—concerning the Article 32 investigation:

COLONEL LOUD: Yes. Colonel Loud. I'm not familiar with an Article 32

investigation or how it comes about or what its purpose is. Does that get into the law? Will you explain that later?

MJ: The law requires an Article 32 investigation to be conducted in every case prior to a case being referred to a court-martial, that is a general court-martial. What occurred during that investigation is of no consequence to this trial. I'm not going to say any more.

After all the evidence for both sides had been presented, trial and defense counsel argued their respective cases to the members. After his introductory comments, trial counsel offered the following analysis of the evidence from the Government's viewpoint, which highlighted the meaning the Government wanted the members to attach to the questions concerning the Article 32 investigation:

Now taking that, we direct your attention to the evidence that is before you. *Based on some of the questions of the court members and some of the questions that were handled during the cross-examination of the accused, there might be some question as to what the government was driving at. Members of the court, this accused has an interest in the outcome of this case that completely outweighs that of any other participant or any witness that has appeared before you.* We would tell you that not one witness that took that stand, not one government witness, was impeached by any prior inconsistent statements, by any bias in favor of any party or in favor of giving unfavorable testimony to the accused, no interest was shown in the outcome of the case. Those were good-citizen witnesses; got up there, and they told you the truth. The accused, however, gets up there, and from his point of view—he's sitting before a general court-martial, he knows he's already facing some punishment, but he also knows that in the sentencing portion of this proceeding, how you court members view him, whether you view him as just someone who used some marijuana and got caught

like a dummy in the middle of this undercover drug operation on two different times, actually three, with Whyms and also then with Dunbar—just a dummy who got caught in the middle of it—then when the time comes to sentence him, regardless of what the max might be, you're obviously going to cut him some slack, and he's going to get off a hell of a lot lighter—pardon me—a heck of a lot lighter than he would if, on the other hand, you view him as someone who is intertwined in the drug culture, who is involved culpably, who, although he may not be the supplier himself, is the kind of guy who is there, who knows the suppliers, who is part of the drug culture, he's friendly, he takes people, brings people from point A to point B, gets them together, maybe smokes a little while he's there, maybe uses a little cocaine. Your view of which kind of guy this accused is is going to have a big impact on sentencing in this case. So when he gets up on the witness stand and when he tells you members of the court that he didn't want to participate, that the informant was bugging him, that Moore kept coming back time and time again—when he tells you that, *he's got an interest in you believing that and a very strong interest. He's heard the testimony prior. That was the point of the question about the Article 32 investigation. He's had time to prepare his defense, had time to think about the charges against him, and you can reasonably infer he's had time to understand how the prosecution was proceeding, what theory we were proceeding on on Specification 5 and Specification 10* because as one court member pointed out, it says that the accused did sell but the testimony shows that the actual transaction occurred in the one case with Whyms and the next case with Dunbar. That's what the law of principals focuses to you. So the accused comes in here, and what he did today was he lined up as best he could with the government testimony because he knew how good those government witnesses were, and he agreed with point by point by point where it was

consistent with his view of what happened and what he wants you to believe.

(Emphasis added.)

Pointing to the first-emphasized portion of the cross-examination set out earlier, appellant reasons along the same lines that the accused did in our recent case of *United States v. Fitzpatrick,* 14 M.J. 394, 398 (C.M. A.1983):

Appellant complains that, for all practical purposes, "the members were informed that on at least one occasion appellant had declined to testify." According to his argument, the members probably reasoned: (1) There had been an Article 32 investigation in this case; (2) at that time the defense had an opportunity to present evidence; (3) trial counsel had not heard Fitzpatrick give his version of the relevant events; (4) trial counsel would have heard this version before if appellant had testified during the Article 32 investigation; (5) therefore, appellant must not have testified during the investigation; and (6) he would have testified at that time if he were innocent as he now asserts.

As we observed in *Fitzpatrick,* "it has long been the position of this Court that it is improper to bring to the attention of the members that the accused has exercised his right to remain silent prior to trial" and that our decisions in this regard "generally mirror constitutional decisions of the United States Supreme Court." *Id.* However, just as we concluded in *Fitzpatrick,* we determine here that appellant in making his complaint has misperceived the thrust of the questions by the prosecutor. It is quite clear to us from a reading of the totality of the cross-examination in question—and our conclusion is reinforced from a reading of the quoted passage from the trial counsel's closing argument addressing that testimony—that what the Government sought to convey to the members was: (1) The Government had no knowledge of what the theory of the defense would be at trial; (2) however, appellant had learned at the Article 32 investigation precisely what the pros-

ecution theory would be and what the government witnesses would say in support of that theory; (3) that, accordingly, appellant had ample opportunity to consider the prosecution's position and to tailor his own testimony to best fit that theory; (4) that appellant had weighty reasons for doing so—namely, the degree of punishment he would receive if found guilty; and (5) contrariwise, none of the Government's witnesses had any self-interest motive for tailoring his testimony. The conclusion urged by the Government was that its witnesses rather than appellant should be believed.

The view we expressed in *Fitzpatrick* applies with equal force here:

Undoubtedly, no one in the courtroom who was listening to the cross-examination [and to trial counsel's argument]—rather than simply being exposed to one or two questions and answers out of context—could reasonably perceive the sinister implication which appellant now finds in the questioning. Indeed, if such implications had been apparent, we have no doubt that ... [appellant's] defense counsel, who vigorously and competently asserted his rights at the trial, would have lodged a suitably specific objection.

*Id.* at 399 (footnote omitted).

Accordingly, the decision of the United States Air Force Court of Military Review is affirmed.